IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHISN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| | ) | Case No. 24 CR 448 |
| v. | ) | |
| | ) | Hon. Sunil R. Harjani |
| Christopher Sianez, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Christopher Sianez has moved to dismiss the indictment charging him with a violation of Title 18, United States Code, Section 922(g)(1). Defendant claims the charge violates the Second Amendment in light of the Supreme Court's decision in *New York State Rifle & Pistol Assn v. Bruen*, 597 U.S. 1 (2022) on both a facial and as applied basis.

As an initial matter, the constitutionality of Section 922(g)(1) is a matter on appeal to the Seventh Circuit Court of Appeals in *United States v. Prince*, No. 23-3155 (7th Cir.). The parties initially agreed to await the Seventh Circuit's decision in *Prince*, but recently Defendant has asked for a ruling from this Court so that it may enter a guilty plea that preserves his right to challenge the constitutionality of Section 922(g)(1) on appeal. The Court notes that there are many cases that are stayed on appeal pending the decision in *Prince*, and this case likely will also receive the same treatment if *Prince* is not issued before a judgment in this matter and a notice of appeal is filed.

Given that this Court will adhere to the binding precedent of the court of appeals from *Prince*, which will be decided any day now, this Court will summarize its reasons for denying defendant's motion to dismiss rather than provide a full and detailed historical review of the nation's laws on firearms regulation and the Second Amendment jurisprudence established in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *Bruen*, and *United States v. Rahimi,* 602 U.S. 680 (2024), as other courts have done. The Court notes that the Seventh Circuit has recently upheld the constitutionality of an Illinois law forbidding licensees from carrying firearms on public transportation under the *Bruen* test. *Schoenthal v. Raoul*, 2025 WL 2504854 (7th Cir. Sept. 2, 2025). The Seventh Circuit also recently held that that Section 922(g)(5)(A) prohibiting noncitizens from possessing a firearm while illegally or unlawfully in the United States did not violate the Second Amendment. *United Staes v. Carbajal-Flores*, 143 F.4th 877 (7th Cir. 2025). Similarly, the Seventh Circuit also held that Section 922(g)(3), which prohibits users of unlawful drugs and those addicted to such drugs from possessing a weapon, did not violate the strictures of

the Second Amendment as applied to that defendant. *United States v. Seiwert*, 2025 WL 2627468 (7th Cir. 2025). While in different contexts, these decisions indicate to this Court that the court of appeals is likely to uphold the constitutionality of Section 922(g)(1) as well under the *Bruen* test.

## I. Facial challenge

First, applying the current precedent to date, the Court finds that Section 922(g)(1) is constitutional under biding precedent. In *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024), the defendant challenged his conviction under Section 922(g)(1) on appeal by arguing that the Second Amendment permitted persons with felony convictions like himself to possess firearms. *Id.* The Seventh Circuit noted that Gay's argument was "hard to square" with *Heller*'s language that "long standing prohibitions on the possession of firearms by felons" are valid. *Id.* (quoting *Heller*, 554 U.S. at 626, 635). The Seventh Circuit further noted that the Supreme Court had reiterated that all of the reservations and provisos in *Heller* remain valid post-*Bruen*. *Id.*; *see also McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Gay* also noted that multiple Justices had written separately in *Bruen* to explain that the decision "did not change anything about *Heller*." *Id.* (first citing *Bruen*, 597 U.S. at 72 (Alito, J., concurring), and then citing *Bruen*, 597 U.S. at 80–81 (Kavanaugh J., concurring)). *Rahimi* made the same point. *Rahimi*, 602 U.S. at 699 ("[O]ur opinion [in *Heller*] stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" (quoting *Heller*, 554 U.S. at 626, 627 & n.26)); *see also id*. at 735–36 (Kavanaugh, J., concurring). The analysis in *Gay* is therefore entirely consistent with *Rahimi*. *Gay* essentially foreclosed facial challenges to Section 922(g)(1).

Even if it did not, the Court finds that Section 922(g)(1), the Court finds that it satisfies the *Bruen* test. To prevail on a facial challenge, Defendant must show that the statute is unconstitutional in all applications. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). As the Supreme Court noted in *Rahimi*, "[t]his is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, "to prevail, the Government need only demonstrate that [the challenged provision] is constitutional in some of its applications." *Id.* As many courts have done, to expedite the analysis, this Court will assume without deciding that felons are within the class of "people" covered by the Second Amendment, and thus will skip step one of the *Bruen* analysis and proceed directly to the step two history and tradition test. *See, e.g.*, *Seiwert*, 2025 WL 2627468, at *4; *United States v. Donald*, 732 F. Supp. 3d 937, 938 n.1 (N.D. Ill. 2024). The Court finds that the government has met its burden in showing that Section 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment. *Bruen*, 597 at 4. After *Bruen*, the Seventh Circuit clarified that a district court must engage in a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" to determine if "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is justified." *Atkinson v. Garland*, 70 F.4th 1018, 1021–22 (7th Cir. 2023) (quoting *Bruen*,

2

597 U.S. at 29). Here, this means that the government must present historical analogues to show there is a tradition of limiting the right to keep and bear arms that is aligned with Section 922(g)(1).

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." The government analogizes Section 922(g)(1) with two types of historical laws: (i) laws that categorically disqualified groups who were untrustworthy adherents to the law from possessing firearms, and (ii) laws that authorized capital punishment and estate forfeiture for felonies.

Laws prohibiting untrustworthy individuals from possessing firearms have existed since at least late 17th-century England. *Bruen,* 597 U.S. at 20. The government points out, for example, how in 1689, the English government passed a law disarming Catholics who refused to make declarations renouncing their faith. 1 W. & M., an. 1, sess. 1, c. 15, in 6 *The Statutes of the Realm* 71–73 (1688); [20] at 20. This law was based on a theory that Catholics were disobedient of the sovereign, not that they were necessarily dangerous. *Range v. Att'y Gen. of the U.S.*, 69 F.4th 96, 121–22 (3d Cir. 2023) (Krause, J., dissenting) (explaining that disarmament laws were not "based on the notion that every single Catholic was dangerous" but rather "the disarmament of Catholics in 1689 reflects Protestant fears that Catholics could not be trusted to obey the law"), *vacated*, *Garland v. Range*, 144 S. Ct. 2706, *remanded to*, *Range v. Att'y Gen. of the U.S.*, 124 F.4th 218 (2024). The government also cites other laws in which untrustworthiness, as opposed to demonstrated danger, served as a basis for disarming a person. *See* [478] at 21; *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024). Further, in 18th-century England, one "arousing 'suspicion of an intention to commit any act of violence or disturbance of the peace'" was often prohibited from possessing a firearm. C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 716 (2009).

The government points out that Colonial Americans then continued the English tradition of disarming those "perceived as dangerous." [20] at 22–24; Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 262 (2020). "Like English laws, colonial laws were sometimes discriminatory and overbroad—but even those were intended to prevent danger." Greenlee, *Historical Justification*, *supra*. As the government explains, the Continental Congress recommended, in 1776, that colonial governments disarm those who were "notoriously disaffected to the cause of America" or who simply "have not associated" with the colonial governments in the war effort. [20] at 25; 4 Journals of the Continental Congress 1774-1789, at 205 (1906) (resolution of March 14, 1776). Similarly, Section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century" in that the statute categorically disarms untrustworthy individuals—namely, felons. *See Atkinson*, 70 F.4th at 1023. Accordingly, the government has demonstrated a history and tradition of disarming untrustworthy people in this country.

Next, the government also provides support that, historically, laws went much further than Section 922(g)(1)—by authorizing capital punishment and estate forfeiture for felons. [20] at 28. Before the founding, the standard penalty for a felony was death. *See* 4 William Blackstone, *Commentaries on the Laws of England* 98 (1769). Additionally, the government points out that upon conviction a felon's estate would escheat to the state, and he would be required to forfeit all his goods and chattels—including his arms. *Id.* at 378–82. Similarly, in early America "death was 'the standard penalty for all serious crimes' at the time of the founding." *Bucklew v. Precythe*, 587 U.S. 119 (2019) (citation omitted). This also explains why disarmament laws were not even more prevalent. *Range*, 69 F.4th at 126–27 (Krause, J., dissenting) ("[T]he ubiquity of the death penalty suggests that the Founding generation would have had no objection to imposing on felons the comparatively lenient penalty of disarmament.").

The *Rahimi* Court highlighted the throughline between historical laws punishing felonies with death or estate forfeiture and modern laws that prohibit felons from possessing arms. The Court wrote that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791" and that "a challenged regulation [need] not precisely match its historical precursors" to be constitutional. *Rahimi*, 602 U.S. at 691–92. In this vein, the Court elaborated, "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible." *Id.* at 699. Thus, the capital punishment and estate forfeiture laws for felons are "relevantly similar" to Section 922(g)(1). *Id.* at 692 (quoting *Bruen*, 597 U.S. at 29).

Defendant cites to *United States v. Prince*, 700 F.Supp.3d 663, 669-676 (N.D. Ill. 2023) and *United States v. Neal*, 715 F. Supp. 3d 1084, 1096 (N.D. Ill. 2024)—cases in which district courts found that Section 922(g)(1) was not consistent with the nation's historical tradition. Neither case is binding on the Court. Reasonable minds can disagree, and in any event, the Seventh Circuit will decide the matter for our circuit.

While the English and colonial laws discussed above may not perfectly align with Section 922(g)(1), they are sufficiently analogous with Section 922(g)(1) to show the statute is consistent with the nation's history and tradition. And further, *Bruen* only "requires only that the government identify a well-established and representative historical analogue, not a historical twin." 597 U.S. at 30. The government has met this burden.

## II.    As-Applied Challenge

The Seventh Circuit explicitly did not hold that all as-applied challenges to § 922(g)(1) are inappropriate, noting that for "the sake of argument that there is some room for as-applied challenges." *Gay*, 98 F.4th at 846 (emphasis omitted). However, the Seventh Circuit rejected such a challenge from *Gay*. *Id.* at 846–847. The Court concluded that *Gay* did not fit the description of a "law-abiding, responsible citizen[]," as he had been convicted of twenty-two felonies and was on parole when he was arrested for having a firearm in violation of Section 922(g)(1). *Id.* These felonies were not of a minor nature and included aggravated battery of a peace officer and

4

possessing a weapon while in prison. *Id.* Therefore, the Seventh Circuit found that *Gay* is not a "law-abiding, responsible" person who has a constitutional right to possess firearms. *Id.*

As for Defendant's as-applied argument, other than using the phrase "as-applied," he has not developed one. In *Gay*, the Seventh Circuit recognized that the U.S. Supreme Court has not considered "the question whether non-violent offenders may wage as-applied challenges to § 922(g)(1)." *Id.* at 846. Besides the fact that the Seventh Circuit has never upheld an as-applied Second Amendment challenge to Section 922(g)(1), Defendant also does not offer any support for his proposition that the statute's constitutionality turns on individualized assessments. In *Atkinson*, the Seventh Circuit explained that if a defendant calls for a distinction between violent and non-violent crimes under Section 922(g)(1), the defendant must present historical evidence to justify a different outcome. 70 F.4th at 1024. Defendant has not presented any historical evidence to support such an individualized assessment or a carveout for non-violent felonies. *See id.* at 1023 ("[Atkinson] does not provide much historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes."). To the contrary, the historical evidence points to an opposite conclusion—laws in American colonies and 17th-century England suggest that felons, both violent and non-violent, were targeted for firearm dispossession. [*See supra*]. But even assuming such a challenge is possible, Defendant's motion never discusses his own criminal background and whether it contradicts that he is "law-abiding," the phrase or a variant that *Gay* notes *Bruen* uses repeatedly. *Gay*, 98 F.4th at 846. The government's response recounts Defendant's criminal history, noting that it includes convictions for illegally possessing firearms. At the time of his arrest, defendant had an outstanding warrant for aggravated domestic battery, unlawful restraint, and kidnapping. Moreover, like in *Gay*, defendant did not contest the constitutionality through a declaratory judgment – but instead he is alleged to have "violated the law in secret and tried to avoid detection[,]" which diminishes any law-abiding claim on his part. *Id.* at 847. Defendant's reply brief does not respond to any of these arguments. His as-applied argument is undeveloped and waived. And even if not waived, and an individualized assessment challenge is possible, the Court finds that Defendant is the sort of individual that the statute constitutionally prevents from possessing a firearm as a two-time convicted felon.

Accordingly, Defendant's motion to dismiss the indictment [18] is denied.

**SO ORDERED.**

Dated: September 22, 2025

                                            Sunil R. Harjani
                                            United States District Judge